**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| RABBI MARA NATHAN, on behalf of herself and on behalf of her minor child, M.N., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT, et al., <br><br> Defendants. | CIVIL ACTION NO. 5:25-cv-00756 |

<u>**DECLARATION OF CANTOR SETH ETTINGER IN SUPPORT OF**</u>
<u>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**</u>

I, Cantor Seth Ettinger, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a Plaintiff in the above-captioned matter. Along with my wife, Sarah Ettinger, I am suing on behalf of myself and on behalf of my minor child, R.E.[1] Our family lives in San Antonio, Texas.

2.      R.E. is enrolled in and will attend a public elementary school in the North East Independent School District during the 2025-2026 school year. The first day of school this year is scheduled for August 11, 2025.

3.      My wife and I are Jewish and are raising R.E. in the Jewish faith tradition. We are members and attenders of a local synagogue, where I serve as Cantor, and R.E. attends children's religious education programming. R.E.'s religious education in Judaism has occurred primarily

---

[1] In accordance with Federal Rule of Civil Procedure 5.2(a)(3), all minor Plaintiffs are identified by their initials.

through our temple and faith community, and through me and my wife. R.E. also recently began attending a Jewish summer camp.

4.      I understand that Senate Bill No. 10 ("S.B. 10") requires displays of the Ten Commandments to be hung permanently in a "conspicuous place" in every classroom at R.E.'s school. The posters or framed copies of the Ten Commandments must be a minimum size of sixteen by twenty inches and printed in a size and typeface that is legible to a person with average vision from anywhere in the classroom. The poster or framed copy may include only the text of the Ten Commandments as set forth in S.B. 10. As a result of these minimum requirements of S.B. 10, R.E. will not be able to avoid the displays and will be subjected to them for nearly every hour of the school day.

5.      On behalf of myself and R.E., I object to the school displays mandated by S.B. 10 because the displays will promote and forcibly impose on R.E. a specific version of the Ten Commandments to which our family does not subscribe, in a manner that is contrary to Jewish teachings and our family's Jewish faith.

6.      Although I believe that the Ten Commandments are a sacred Jewish text, the version required by S.B. 10 does not align with our family's Jewish belief and tradition and what we teach R.E. It is a Christian version that does not track the Commandments set forth in the Torah and that implicitly dismisses or denigrates Jewish beliefs. For example, S.B. 10's mandatory version of the Ten Commandments directs: "Thou shalt have no other gods before me." From a Jewish perspective, the use of the word "before" in this Commandment is highly problematic. In the Hebrew Bible, the translated text directs followers to "Have no other god *but* me." The Christian interpretation of this Commandments recited in S.B. 10 suggests that all Gods recognized

before Christianity's recognition of the Christian God—including the Jewish God of the Torah—are invalid.

7.      Another theologically significant example of differences in wording between the Torah's and S.B. 10's versions of the Ten Commandments can be found in S.B. 10's directive that "Thou shalt not kill." In Jewish doctrine, this Commandment centers on the concept of "murder," not killing. The former speaks to intent and is a more nuanced understanding of what it means to cause a death in a manner that is religiously forbidden.

8.      S.B. 10's mandated version of the Ten Commandments also eliminates a key part of the Ten Commandments, as they are set forth in the Torah: the proclamation at the start of the Ten Commandments recognizing that they represent the Jewish people's sacred covenant with God, formed after God freed them from slavery in Egypt. This part of the Hebrew Ten Commandments is a foundational aspect of Jewish identity and is frequently referenced during Jewish prayer services. Stripping it away to create and display in public schools a Christianized version of the Ten Commandments is deeply offensive to our faith and family.

9.      The version of the Ten Commandments required under S.B. 10 has been made Christian-centric in myriad other ways. Not only does it use different wording with respect to particular Commandments, but it omits many other provisions in the Torah that accompany the Commandments. By summarizing some Commandments instead of including the text as found in the Torah in its entirety, the displays will present an inaccurate and decontextualized version of scripture, from a Jewish perspective.

10.      Moreover, by using Old English terminology, such as "manservant" and "maidservant," S.B. 10's version of the Ten Commandments conflicts with the egalitarian Jewish values we follow and teach R.E. This language suggests an endorsement of slavery, while the text's

prohibition on coveting "thy neighbor's 'wife'" and its demand that students "honor they mother and father" buy into discriminatory gender roles and exclude families that may have same-sex parents. It is precisely because outdated language and provisions in any version or translation of scripture could be misunderstood to convey messages antithetical to our present-day religious community that we believe (and our religious practice requires) that R.E.'s religious education should occur at home and in our faith community, where we can contextualize and ground scriptural instruction in our core Jewish values. We strongly believe that public schools are an inappropriate place for, and ill-equipped to handle, such sensitive religious instruction.

11.     By imposing on R.E., for nearly every hour of the school day, a Christian-centric version of the Ten Commandments that conflicts with our Jewish beliefs and practices, the displays mandated by S.B. 10 will substantially interfere with R.E.'s religious development and threaten to undermine the religious beliefs, values, and practices my wife and I seek to instill in R.E. as part of our Jewish faith. To take one example, the displays will send a confusing message to R.E. that the Christian-centric Commandments, as depicted in the displays, are rules that R.E. must follow in the same way that R.E. would follow any rule set forth by a teacher or school authority figure. As a result, the displays will pressure R.E. to observe, meditate on, venerate, and adopt the State's preferred religious doctrine, even though R.E. may also recognize that the posted scripture does not comport with what R.E. has been taught at home and at synagogue regarding Jewish belief and practice.

12.     Further, as a student of a minority faith at school, R.E. is already grappling with R.E.'s religious differences from the majority of R.E.'s classmates. For example, R.E. has experienced proselytizing by peers and has experienced pressure to take part in activities surrounding Christian holidays. By sending a message to students, including, R.E., that there is

4

only one true faith, and that those who do not believe in the Commandments posted in the classroom are outsiders, the displays mandated by S.B. 10 will lead to an "us" ("Christians") vs. them ("non-Christians") mentality among R.E. and R.E's peers and will further accentuate R.E.'s religious differences. As a result, R.E. will feel isolated at school and pressured to suppress expression of R.E.'s Jewish identity.

13.    The displays mandated by S.B. 10 will also substantially burden my religious exercise. The responsibility to guide R.E. in the development of R.E.'s Jewish faith, including R.E.'s understanding of the text and meaning of the Ten Commandments, is a vital part of my religious exercise and my role as a parent and faith leader. We seek to center our religious education and upbringing of R.E. on Jewish beliefs, doctrine, and practices. By foisting on R.E. a Christian version of the Ten Commandments for nearly every hour of the school day, the displays will create confusion for R.E. and will force us to shift our focus from one that centers Judaism to one that is focused on countering the Christian beliefs that are promoted at school.

14.    Furthermore, the displays mandated by S.B. 10 will negatively affect my religious exercise in my professional capacity as a faith leader. My work as a Cantor focuses heavily on cultivating interfaith dialogue, ecumenical interaction, and respect for all religions within our community. But the displays are likely to sow religious divisiveness within our community, contrary to our Jewish values and my professional religious purpose. Meanwhile, my work as a religious tutor for sixth graders and seventh graders who are approaching bar and bat mitzvah age—including many who attend public school—helps them not only learn about Jewish religious belief but also counsels them about what it means to be a Jewish person in the world today, in an effort to ensure that they can move through the world comfortable in their Jewish identity. These efforts will be made much more difficult because of S.B. 10's displays, which will convey to these

students (as to R.E.) that they are disfavored, less valued members of the community simply because they are not Christians.

      15.    I hereby declare under penalty of perjury that the foregoing is true and correct. Executed on July 2, 2025.

_____

Cantor Seth Ettinger