UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RABBI MARA NATHAN, on behalf of herself and on behalf of her minor child, M.N., et al.,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT, et al.,<br><br>　　　　Defendants. | CIVIL ACTION NO. 5:25-cv-00756 |

**DECLARATION OF PASTOR JAMES GRIFFIN MARTIN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Pastor James Griffin Martin, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Plaintiff in the above-captioned matter. Along with my wife, Abigail Martin, I am suing on behalf of myself and on behalf of my minor children, J.M. and B.M.[1] Our family lives in Austin, Texas.

2. J.M. and B.M. are enrolled in and will attend a public middle school and high school, respectively, in the Austin Independent School District during the 2025-2026 school year. The first day of school this upcoming academic year is scheduled for August 19, 2025.

3. I am Senior Pastor at a local Baptist church, where I have served for nine years. My wife and I are raising J.M. and B.M. in the Baptist tradition. J.M.'s and B.M.'s religious education

---

[1] In accordance with Federal Rule of Civil Procedure 5.2(a)(3), all minor Plaintiffs are identified by their initials.

1

in Christianity has occurred primarily through my wife and I, and through our church and faith community. The children attend church weekly and attend youth camps through our church.

4. I understand that Senate Bill No. 10 ("S.B. 10") requires displays of the Ten Commandments to be hung in a "conspicuous place" in every classroom at both J.M's and B.M.'s schools. The posters or framed copies of the Ten Commandments must be a minimum of sixteen by twenty inches and printed in a size and typeface that is legible to a person with average vision from anywhere in the classroom. The poster or framed copy must include only the text of the Ten Commandments as set forth in S.B. 10. As a result of these minimum requirements, J.M. and B.M. will not be able to avoid the displays and will be subjected to them for nearly every hour of the school day.

5. On behalf of myself and my children, I object to the school displays mandated by S.B. 10 because the displays will promote and will forcibly subject my children to overtly religious classroom displays in a manner that violates my family's religious beliefs and practices; usurp my parental role in directing my children's religious education, religious values, and religious upbringing; send an improper message to me, my children, and our community that people of some religious denominations or faith systems are superior to others; and pressure my children to doubt and suppress their own religious beliefs.

6. While the Ten Commandments are a sacred text in my faith, the version required by S.B. 10 does not align with the Baptist values that I am teaching my children. For example, the text in the state's approved version of the Ten Commandments is antiquated, treats some people as property, and includes patriarchal and gendered language—all of which conflict with my family's Baptist beliefs that value equality and respect for all people.

7.     The Ten Commandments on their own also do not sum up our Baptist faith, and having them posted in a public school undermines what my wife and I are teaching our kids about Christianity. As a pastor and parent, I believe that scripture, including the Ten Commandments, must be taught—especially to children—within the context of a family's church and particular faith tradition. Learning about and navigating scripture within the context of our faith is critical to ensuring that my children's understanding of religious text and comprehension aligns with our family's Baptist teachings, religious beliefs, and values. For example, one may think that the Commandment not to take the Lord's name in vain means to not say "God damn it." However, my interpretation—and how I teach this Commandment to my congregation—is that it is about living a life that is centered on the values of God, such as welcoming the stranger, caring for the needy, feeding the hungry, healing the sick, sheltering the unhoused, sharing resources, and loving all. Displaying this and other Commandments in schools, in accordance with the baseline requirements of S.B. 10 and without any broader Baptist context, sends the wrong message to my children about the Commandments' meaning and interpretation. It is just one of the reasons why Baptist faith tenets oppose the imposition of religious doctrine in schools and counsel instead that it be taught at church and within the family. Indeed, separation of church and state is a core Baptist principle and one of the Four Fragile Freedoms of the Baptist tradition. And the displays mandated by S.B. 10 will undermine this core principle of my faith.

8.     The displays mandated by S.B. 10, which will be imposed on J.M. and B.M. nearly every hour of the school day, also conflict with Baptist teachings that oppose elevating one religious belief over another belief or non-belief system. Our faith tradition teaches that we must be respectful of other people's religions or lack thereof and that religious beliefs and practices

should not be imposed on non-adherents. Forcing Christian beliefs and doctrine on public school students violates this tenet.

9. Relatedly, the school displays also send a confusing message to J.M. and B.M. that Christianity is dominant and authoritative, which undermines what I am teaching my children about respecting other people's religions and lived experiences, consistent with the Baptist tradition. As such, the school displays substantially interfere with J.M.'s and B.M.'s religious development and threaten to undermine the religious beliefs, values, and practices my wife and I seek to instill in them as part of our Baptist faith.

10. Furthermore, the school displays will pressure J.M. and B.M. to suppress expression of their religious identity in school. Because the Christian-centric displays will cause their peers who are not Christian to feel excluded at school, J.M. and B.M. will distance themselves from Christianity, in fear of their peers associating the imposition of the Ten Commandments with J.M.'s and B.M.'s Christianity. Because of laws like S.B. 10, which impose Christianity on non-Christians, and because of the movement to misuse Christianity as a sword to harm others, my children already feel pressure to suppress their religious identity at school; they do not want to be misunderstood as agreeing with these hurtful actions taken in the name of their faith. The school displays will only exacerbate this experience.

11. Worse, the school displays and their implications may cause J.M. and B.M. to doubt their own Baptist values. For example, J.M. and B.M. strongly believe in the inclusion and equality principles of our Baptist faith. However, having the Ten Commandments imposed on their peers and making their peers feel excluded from their school community is the antithesis of J.M.'s and B.M.'s devotion to God and our Baptist faith. Knowing that Christian scripture is causing pain to

their school peers may lead J.M. and B.M. to resent their religion, and to question or doubt their participation in a religion that hurts their friends.

12.     The responsibility to guide J.M. and B.M. in the development of their Baptist faith is an essential aspect of my religious exercise and role as a parent. However, forcibly imposing on J.M. and B.M. an antiquated version of the Ten Commandments in school—where religious scripture does not belong—for nearly every hour of the school day, as required by S.B. 10, will directly interfere with my role as a parent and substantially burden that religious exercise.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed on July 2, 2025.

_____
Pastor James Griffin Martin