UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RABBI MARA NATHAN, on behalf of herself and on behalf of her minor child, M.N., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 5:25-cv-00756 |

**<u>DECLARATION OF REBEKAH LOWE IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

I, Rebekah Lowe, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Plaintiff in the above-captioned matter, along with my husband Theodore Lowe. I am suing on behalf of myself and on behalf of my minor children, E.R.L and E.M.L.[1] Our family lives in Spicewood, Texas.

2. E.R.L. and E.M.L. are enrolled in and will attend elementary and middle public schools in the Lake Travis Independent School District during the 2025-2026 school year. The first day of school this year is scheduled for August 13, 2025.

3. I was raised in the Pentecostal and Southern Baptist Churches. I am now primarily affiliated with the Presbyterian Church U.S.A. I directed the Church's children's ministry for five years in Los Angeles, where I oversaw the Sunday School, Vacation Bible School, and volunteer

---

[1] In accordance with Federal Rule of Civil Procedure 5.2(a)(3), all minor Plaintiffs are identified by their initials.

1

recruitment. Now, I oversee operations, product, and curriculum development for a church-resource organization that sells Sunday School curricula, liturgy writing, and other materials used by faith leaders. As part of my job, I work to create resources that empower Christian faith leaders to be inclusive and navigate biblical texts, Christian customs, and imagery so that those who have been traditionally excluded and harmed by Christian practices, such as LGBTQIA+ people, women, and people of other religious traditions, can find belonging. I put into practice these values of inclusivity with my children as well.

4. My husband was raised Jewish. Although he still considers himself Jewish and engages in some Jewish cultural traditions, he is religiously agnostic.

5. We are raising E.R.L. and E.M.L. with a combination of Christian beliefs and Jewish cultural traditions. I have chosen not to dictate a certain Christian denomination to my children. Instead, I teach them about God, the Bible, and our family values and encourage them to be curious about their faith. In discussions with my children, I use "The Inclusive Bible: First Egalitarian Translation," which refrains from using gendered language to discuss God and highlights the role of women in the Bible. It is important to me that my children are taught an expansive image of God and the divine, one that includes all of us. I teach my children that we are all created in God's image and that, therefore, no one person is superior to or more beloved than another. I believe those teachings are especially important because I want my children to embrace their Jewish heritage. We celebrate Hannukah, Christmas, and Easter in more of a cultural fashion. E.R.L. and E.M.L. identify as both Christian and Jewish.

6. I understand that Senate Bill No. 10 ("S.B. 10") requires displays of the Ten Commandments to be hung in a "conspicuous place" in every classroom at my children's schools. The posters or framed copies of the Ten Commandments must be a minimum size of sixteen by

twenty inches and printed in a size and typeface that is legible to a person with average vision from anywhere in the classroom. The poster or framed copy must include only the text of the Ten Commandments as set forth in S.B. 10. As a result of these minimum requirements, E.R.L. and E.M.L. will not be able to avoid the displays and will be subjected to them for nearly every hour of the school day.

7. On behalf of myself and my children, I object to the displays required by S.B. 10 because they will promote, and forcibly subject my children to, overtly religious classroom displays in a manner that violates my family's religious, spiritual, and moral beliefs and practices.

8. My husband and I regularly talk to our children about faith, right and wrong, and how to treat others. We teach them to be good family members, good friends, and good community members. My expertise in religious education informs how I teach and guide my children. I ensure that the conversations I have with my children are age and developmentally appropriate. Prior to the passage of S.B. 10, I had decided against having my children read the Ten Commandments as part of their religious education. Instead, my plan was to paraphrase the language of religious texts to make them understandable, relatable, and accessible for my children. I focus on elevating the messages "love God," "love thy neighbor," and "love thyself."

9. By mandating the display of the Ten Commandments in my children's classrooms, the government will directly interfere with my plan for my children's religious and spiritual upbringing. Already, because of S.B. 10, I felt compelled to show my children the text of the Ten Commandments for the first time. I had to explain what adultery is in more detail than I wanted to with my youngest child. I also had to explain to my children that, to me, "Thou shalt not take the Name of the Lord thy God in vain" means that people cannot use God's name to dictate to others what they should do or to cause harm to others under God's name. I explained that I believe

displays of the Ten Commandments in public school classrooms—which harm Christian and non-Christian students alike—amounts to the Texas government taking the Lord's name in vain, in violation of my teaching to my children to avoid invoking God to harm others. Instead of teaching my children the story of the Ten Commandments in the Book of Exodus as part of an effort to form a free and liberated community—as I wanted to at the appropriate time—we are now discussing why the government is mandating a singular religious text in their classrooms.

10. Once the displays are posted, E.R.L. and E.M.L. are subjected to them on a daily basis, for nearly every hour they are in school, the disruption to my plan for my children's religious education will only intensify, requiring me to devote additional time and focus to the matter. For example, part of the moral and spiritual instruction I provide to my children requires loving their neighbors as themselves and promoting peace, belonging, and inclusivity within their peer groups and community. I believe and teach my child that no one person or faith is superior to another. By declaring that "I AM the LORD thy GOD" and "Thou shalt have no other gods before me," the Ten Commandments displays will elevate one image of God above all others, sending the message—in direct contradiction to what I teach at home—that those who do not believe in this God or believe in multiple Gods are inferior or less worthy.

11. In my religious teachings, I also make sure to provide my children with context to the Bible's teachings. For example, if I were to teach them to "not covet thy neighbor's . . . manservant, nor his maidservant," text that is mandated by S.B. 10, I would also teach them about the history of slavery, as I do when we discuss American history. With each commandment, I would take the time to explain the historical context and how the commandment has been used or abused over time. The Ten Commandments displays in my children's classrooms will hinder my ability to teach my children about the Bible and the Ten Commandments with proper context.

12. The displays mandated by S.B. 10 will also send a confusing message to E.R.L. and E.M.L. that they must believe in the Ten Commandments in order to be "real" Christians, in direct contradiction to what we are teaching them at home. E.R.L. and E.M.L. will be pressured to read and believe in the particular version of the Commandments displayed in their classrooms, even though it is not a part of their spiritual upbringing. Specifically, they will feel pressure to agree that the God as interpreted on the Ten Commandments display, is their, and everyone else's, only God. I am concerned that the Ten Commandments will discourage E.R.L. and E.M.L. from thinking critically about faith and religion. In the religious guidance I provide to them, I ask them open-ended questions and encourage them to explore their faith. The Ten Commandments displays interrupt that process by dictating to my children what the government tells them they should believe.

13. The displays mandated by S.B. 10 will also communicate to my children that Christians are superior to non-Christians and that their Christian identity is more important than their Jewish identity and more important than their classmates' non-Christian religious beliefs, pressuring E.R.L. and E.M.L. to suppress expression of their Jewish identities at school to avoid potential disfavor from school officials or peers. At the same time, the displays will, ironically, also put my children in the position of defending the existence of the Jewish faith, which imposes an undue burden on them. For example, E.R.L. was once told by a classmate that "Hannukah is a fake celebration, Judaism is not real, and that [E.R.L.] needs to follow Jesus," which was incredibly distressing for E.R.L. I am worried that such bullying would only increase with ever-present Christian displays of the Ten Commandments in every classroom. Additionally, E.M.L. has already expressed concerns that E.M.L. will need to believe and behave according to the Ten Commandments displays in order to fit in, belong, and not get in trouble at school. I am concerned

that if E.M.L. is already feeling this way before the school year starts, E.M.L. will feel even more pressure during the year and will be coerced into a limited view of the Christian faith while attending public-school.

14. The message that Christians are preferred over non-Christians will also pressure my children to suppress their Christian identities. E.R.L. and E.M.L. have friends of all different faiths, and receiving the message that they are superior to them will cause serious emotional turmoil, distract them from their studies, and cause them to hesitate in expressing their Christian beliefs to avoid suggesting that they agree with the exclusionary message the displays send to non-Christian students. Moreover, even though E.R.L. and E.M.L. have Christian beliefs, the displays will make them uncomfortable expressing those beliefs because their Christian faith does not strictly adhere to the Ten Commandments. My children have found community at their school, and I do not want them to lose that because their beliefs do not adhere to those promoted by the government.

15. For all the reasons discussed above, I believe that the displays mandated by S.B. 10 will substantially interfere with E.R.L.'s and E.M.L.'s religious development and threaten to undermine the religious beliefs, values, and practices I seek to instill in them. And, as a result, the displays will also undermine and substantially burden my ability to direct and guide their spiritual development, which is a critical part of my religious exercise, especially in light of my training and experience in religious education.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed on July 2, 2025.

*Rebekah Eiland*
Rebekah Lowe