UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RABBI MARA NATHAN, on behalf of herself and on behalf of her minor child, M.N., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 5:25-cv-00756 |

**DECLARATION OF MARA RICHARDS BIM IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Mara Richards Bim, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Plaintiff in the above-captioned matter. I am suing on behalf of myself and on behalf of my minor child, H.B.[1] Our family lives in Plano, Texas.

2. H.B. is enrolled in and will attend a public elementary school in the Plano Independent School District during the 2025-2026 school year. The first day of school this year is scheduled for August 12, 2025.

3. I am a faith leader in an Alliance of Baptists church and am set to be ordained as a minister in the fall of 2025. I hold a Master of Divinity degree and am currently the Justice and Advocacy Fellow at a local Baptist church, a role in which I preach and teach the Gospel message to members of our congregation. I am raising H.B. in the Baptist faith.

---

[1] In accordance with Federal Rule of Civil Procedure 5.2(a)(3), all minor Plaintiffs are identified by their initials.

1

4. H.B.'s religious education has occurred primarily through our church and faith community, as well as through me, my spouse and our family. H.B. attends Sunday school and is attending a vacation bible school at our Baptist church. H.B. also attended a pre-Kindergarten transition program and presently attends afterschool and vacation bible school programs at a local United Methodist Church. In any given week, H.B. is inside of church buildings and receiving some form of Christian education six out of seven days.

5. I understand that Senate Bill No. 10 ("S.B. 10") requires displays of the Ten Commandments to be hung in a "conspicuous place" in every classroom at H.B.'s school. The posters or framed copies of the Ten Commandments must be a minimum size of sixteen by twenty inches and printed in a size and typeface that is legible to a person with average vision from anywhere in the classroom. The poster or framed copy must include only the text of the Ten Commandments as set forth in S.B. 10. As a result of these minimum requirements, H.B. will not be able to avoid the displays and will be subjected to them for nearly every hour of the school day.

6. On behalf of myself and H.B., I object to the displays mandated by S.B. 10 because they will promote, and will forcibly subject H.B. to, overtly religious classroom displays in a manner that violates my family's religious beliefs and practices.

7. The displays will also usurp my parental role in directing H.B.'s religious education, religious values, and religious upbringing. Specifically, I believe that S.B. 10 will substantially interfere with H.B.'s religious development and threaten to undermine the religious beliefs, values, and practices I seek to instill in H.B. as part of our Baptist faith.

8. The ability to direct and guide H.B.'s spiritual development and religious formation is an essential aspect of my religious exercise. For the reasons discussed below, the displays mandated by S.B. 10 will significantly interfere with and substantially burden my ability to carry

out this religious exercise.

9. As a faith leader and parent, I believe that scripture, including the Ten Commandments, is best understood—especially by children—when presented within the context of a family's church and specific faith community. This ensures that a child's introduction to, and comprehension of, the religious text aligns with their family's and community's religious beliefs.

10. My family and Baptist church do not emphasize the Ten Commandments to children at H.B.'s stage in life and instead emphasize the Commands of Jesus: to love God and to love our neighbors just as we love ourselves. While the Ten Commandments are part of the text we hold sacred, as a whole, they are not the central focus of our faith, and neither I, nor our church, have taught them to H.B. I believe the posters in the form required by S.B. 10 will emphasize the Ten Commandments as a pillar of faith and American citizenship. But such an emphasis conflicts with our family's faith.

11. Thus, as a spiritual matter and to avoid H.B. receiving a message that conflicts with our faith, I believe it is critical that this text be presented to H.B. by me or through my family's church, at the proper time, in the correct context, and in the Biblical translation used by our family and church. Instead, S.B. 10 will impose the state's translation (drawn from the King James Version of the Bible) on H.B. every day, in every classroom. In fact, our church and family do not use the translation of the Ten Commandments required by S.B. 10. In our church and in our home, we use the New Revised Standard Version of the Bible.

12. In addition, the Bible does not contain a single list of what we refer to as "the Ten Commandments"—the Ten Commandments are detailed many times in the Bible, and each permutation contains differences. In my faith, any study of these Commandments would include a nuanced conversation about these differences within scripture. This simplified list of

Commandments, curated by the state and presented in a translation unfamiliar to H.B., will confuse H.B. and prove detrimental to H.B.'s later religious education. I am concerned this will cause H.B. to question whether the religious teachings H.B. is receiving from me and our faith community are "wrong" because H.B. has learned something different at school. I am worried that this questioning would cause H.B. to abandon our faith tradition altogether, leaving H.B. unmoored in life.

13. I also believe that S.B. 10's use and approval of one particular version of the Ten Commandments, and its mandate that this scripture be displayed in H.B.'s classrooms, improperly sends the message to me, H.B., and our community that people of some Christian denominations are superior to others and that, in the eyes of the state, there is a religious hierarchy. The message from the state to me, H.B. and our faith community, is that we are not the "right" kind of Christians because we do not adhere to this state-sponsored religion. This religious favoritism also violates my family's Baptist beliefs, which prioritize treating our neighbors as ourselves—this includes not harming our neighbors physically, emotionally, or spiritually. H.B. has many religiously diverse classmates who will be made to feel othered, less-than, and excluded by S.B. 10's required postings. My family considers this to be un-Christian behavior that I do not wish H.B. to witness or learn at school.

14. I further believe that S.B. 10 represents an intrusion of governmental authority into matters of faith. As a Baptist within the historic Baptist tradition, I hold to the call by Roger Williams, the founder of the first Baptist church in America, for a "hedge or wall of separation between the garden of the church and the wilderness of the world." Since Williams's clarion call, Baptists, including me, have adamantly stood against the intrusion of the state into religious matters and against the imposition of religion upon the citizens of the state. As a proud Baptist, the state's imposition of this curated version of the Ten Commandments on me, H.B., and our

community is oppressive and asserts a false notion that the state's authority in this matter is greater than God's.

15. I believe that, through S.B. 10, the state is making a theological claim—a claim about the nature and substance of God—by the presentation of this simplified and curated list of Commandments and by mandating they be presented in this specific translation of the Bible. In my Baptist tradition, it is deeply impermissible for the government to make any such theological claim.

16. The displays of the Ten Commandments posted in H.B.'s classrooms will not only interfere with and undermine my ability to guide H.B.'s spiritual development, but they will also pressure H.B. to accept and believe—contrary to my family's Baptist tradition—the exclusionary religious messages conveyed by the displays, including that (1) some Christian denominations and theologies are more true and preferable than others and (2) the state has legitimate authority over theological claims.

17. I believe that H.B. will also be pressured to suppress H.B.'s faith in God and in the freedom of conscience the Creator has endowed each of us with, especially in school. In our family's Baptist faith, we venerate freedom of conscience and believe that it is neither right for someone to violate, or ask us to violate, our own consciences, nor is it right for us to do this to anyone else. I fear that, in witnessing and being part of a religiously coercive experience, H.B. will begin to view Christianity as a coercive system of oppression, or reject me, my spouse, and our faith community as authority figures on issues of faith and religion.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed on July 2, 2025.

*Mara Richards Bim*
Mara Richards Bim